STATE OF CONNECTICUT *v.* FELIX RIVERA
(AC 17628)

O'Connell, C. J., and Schaller and Dupont, Js.

Argued September 24—officially released December 21, 1999

*Alice M. Sexton,* special public defender, for the appellant (defendant).

*Christopher T. Godialis,* assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Rachel M. Baird,* assistant state's attorney, for the appellee (state).

*Opinion*

O'CONNELL, C. J. The defendant, Felix Rivera, appeals from the judgment of conviction, rendered after a jury trial, of possession of a narcotic substance in violation of General Statutes § 21a-279 (a), possession of a narcotic substance within 1500 feet of a public school and a public housing project in violation of General Statutes § 21a-279 (d), possession of a narcotic substance with intent to sell in violation of General Statutes § 21a-277 (a), possession of a narcotic substance with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), and possession of a narcotic substance with intent to sell within 1500 feet of a public school and a public housing project in violation of General Statutes § 21a-278a (b). The defendant claims that the trial court improperly (1) denied his motion to suppress narcotics

evidence, (2) ruled on evidentiary matters and (3) sentenced him on the first three counts of the amended information. We affirm the judgment of the trial court in part and reverse it in part.

The following facts and procedural history are necessary to a resolution of this appeal. On February 10, 1996, at approximately 10:45 a.m., Officer Mark Castagna of the Hartford police department observed three individuals, including the defendant, in an area known for street level drug activity. He observed a male hand currency to a female, and he then witnessed the defendant hand a small object to the male. Believing that a drug transaction had occurred, Castagna ordered the three individuals to stop and to place their hands on an adjacent vehicle. The defendant fled, and, during the ensuing brief foot chase, another Hartford police officer, Matthew Rooney, observed the defendant drop a black film canister. After the defendant was apprehended, Rooney found the black film canister, which contained eighteen small envelopes with a heroin-cocaine mix, near the defendant. The defendant's pretrial motion to suppress the narcotics evidence was denied.

I

The defendant claims first that Castagna's order to the defendant, commanding him to place his hands on an adjacent vehicle, constituted an illegal seizure under the state and federal constitutions, and that the fruits of that seizure, including the narcotics found in the film canister should, therefore, not have been admitted into evidence at trial. The defendant claims further that the trial court improperly considered the flight by the defendant in determining that Castagna's order was proper. We disagree.

The state does not dispute that Castagna seized the defendant when he ordered him to place his hands on an adjacent vehicle. Accordingly, we will assume,

without deciding, that a seizure did occur at that point. We must, therefore, determine whether that seizure was permissible under the fourth amendment to the United States constitution, and article first, § 7, of the constitution of Connecticut.

"Under both the federal and state constitutions, police may detain an individual for investigative purposes if there is a reasonable and articulable suspicion that the individual is engaged in or about to engage in criminal activity." *State* v. *Groomes*, 232 Conn. 455, 467–68, 656 A.2d 646 (1995). A court reviewing the legality of a stop must examine the specific information available to the police officer at the time of the detention and any rational inferences that may be drawn therefrom. *State* v. *Oquendo*, 223 Conn. 635, 654, 613 A.2d 1300 (1992). "The determination of whether a reasonable and articulable suspicion exists involves a two-part analysis: (1) whether the underlying factual findings of the trial court are clearly erroneous; and (2) whether the conclusion that those facts gave rise to such a suspicion is legally correct. . . . The trial court's conclusions must stand unless they are legally and logically inconsistent with the facts." (Citation omitted; internal quotation marks omitted.) *State* v. *Kyles*, 221 Conn. 643, 660, 607 A.2d 355 (1992).

The defendant maintains that the trial court impermissibly considered postseizure facts in reaching its conclusion that the seizure was proper. This is not the case. In deciding whether Castagna had a reasonable and articulable suspicion sufficient to justify ordering the defendant to place his hands on an adjacent vehicle, the trial court relied only on the information available to Castagna before he attempted to stop the defendant. The trial court's oral ruling denying the defendant's

motion to suppress,[1] and its articulation of that ruling,[2] both clearly indicate that the trial court did not consider the flight of the defendant in determining that Castagna had a reasonable and articulable suspicion that the defendant was engaged in criminal activity when he seized the defendant.

We are further persuaded, after considering all of the information available to Castagna at the time of the seizure, that the trial court's ruling was proper. We conclude, therefore, that the trial court properly denied the defendant's motion to suppress.

## II

In his second claim, the defendant argues that the trial court improperly ruled on evidentiary matters.

## A

The defendant contends that the trial court impermissibly ruled that his objection to the portion of Castagna's testimony stating his opinion that the narcotics were packaged for sale was untimely.

Castagna testified on the basis of his training and experience that the narcotics were packaged for sale rather than personal use. The record reveals that the defendant interposed a late objection to this answer,

---

[1] The trial court, in its oral ruling on the motion to suppress, stated in relevant part: "[B]ased upon the articulated testimony of [Castagna] and taking into consideration [his] training, background and experience . . . [and] that this was a known drug dealing area . . . [and Castagna's] testimony of what he personally observed . . . I find that [Castagna] did have reason to suspect that a drug deal had just taken place . . . . And he had reason to stop and question the parties he suspected of being involved in illegal drug activity. And for those reasons I'm going to deny your motion to suppress."

[2] The trial court, in its articulation, stated in relevant part that it "did not take the defendant's flight into consideration for the purpose of determining whether Officer Castagna had a reasonable and articulable suspicion that the defendant was involved in illegal drug activity, to justify his attempt to make the initial stop to question the defendant."

that the trial court did not rule on the objection, that the defendant never moved to strike the answer, that he did not request that cautionary instructions be given to the jury, and that he did not move for a mistrial regarding this testimony. This claim is therefore unpreserved.

This unpreserved claim is evidentiary rather than constitutional and, therefore, is not reviewable except for plain error.[3] *State* v. *Walton*, 227 Conn. 32, 61, 630 A.2d 990 (1993); see *State* v. *Stephens*, 249 Conn. 288, 291, 734 A.2d 533 (1999); see also Practice Book § 60-5. "[R]eview under the plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Stephens*, supra, 291. This claim of error does not meet that standard. Accordingly, we affirm the trial court with respect to this issue.

B

The defendant also contends that the trial court violated his right to present a defense and to compulsory process by disallowing as irrelevant the testimony of Stacey Beckstein, an employee of the Hartford Superior Court clerk's office. We disagree.

The defendant proffered that Beckstein's testimony about the defendant's criminal record would reveal that the Hartford police department had targeted the defendant because a previous drug related charge was nolled

---

[3] Unpreserved claims of a constitutional nature may also be reviewed under the doctrine enunciated in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), where our Supreme Court held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if . . . the claim is of constitutional magnitude alleging the violation of a fundamental right . . . ." Id. Because this claim is not constitutional in nature, it may not be reviewed under the *Golding* doctrine.

the day before the arrest at issue in this case, and
that her testimony would establish bias and motive to
fabricate evidence. The trial court sustained the state's
objection to this testimony, ruling that it was not rele-
vant as to whether the defendant committed the acts
charged.

"The trial court has broad discretion in ruling on the
admissibility of evidence. . . . The determination of
the relevancy and remoteness of evidence is within the
sound discretion of the trial court." (Citations omitted;
internal quotation marks omitted.) *State* v. *Miller*, 202
Conn. 463, 482, 522 A.2d 249 (1987). "The trial court's
ruling on evidentiary matters will be overturned only
upon a showing of a clear abuse of the court's discre-
tion." *State* v. *Avis*, 209 Conn. 290, 298, 551 A.2d 26
(1988), cert. denied, 489 U.S. 1097, 109 S. Ct. 1570, 103
L. Ed. 2d 937 (1989). The defendant did not present
evidence that Beckstein knew Castagna or Rooney, or
that she had knowledge that either police officer had
an improper motive to arrest the defendant. The trial
court, therefore, could reasonably conclude that
Beckstein's testimony about the defendant's criminal
record would not establish bias and a motive to fabri-
cate evidence, and that it was irrelevant because there
was no connection between Beckstein and Castagna
and Rooney. Accordingly, we are not persuaded that
the trial court clearly abused its discretion in ruling as
it did.[4]

C

The defendant also contends that the trial court
impermissibly allowed certain testimony by Joseph

[4] Although we hold that the trial court properly excluded Beckstein's
testimony, we note that the defendant would not have prevailed on this
claim even if we ruled that the trial court had improperly excluded her
testimony because any impropriety would have been harmless. The exclu-
sion of evidence on a matter that is established otherwise is not ground for
reversal. *Lupoli* v. *Lupoli*, 38 Conn. App. 639, 642, 662 A.2d 809 (1995).
Because the jury heard testimony regarding the defendant's criminal record

McSweegan, a supervisor in the Hartford police department records center. The defendant asserts that McSweegan's testimony regarding why narcotics evidence from an unrelated drug case was destroyed was hearsay, irrelevant and speculative. We disagree.

The defendant established on direct examination that narcotics evidence from the defendant's nolled drug charge was destroyed. The state then sought to elicit, on cross-examination, testimony as to why drug evidence in the nolled case may have been destroyed. The defendant objected, asserting that the state should not be allowed to cross-examine McSweegan, or to present evidence through his testimony, regarding why narcotics evidence was destroyed in the nolled case or in other cases wholly unrelated to either the present case or the nolled case.

The testimony and the materials that the state introduced during McSweegan's cross-examination, however, were properly admitted because they were responsive to McSweegan's direct testimony. The defendant introduced the issue of destruction of evidence through his direct examination of McSweegan, and to respond to this testimony the state properly was allowed to clarify his testimony through materials admitted under the business records exception to the hearsay rule. Accordingly, the trial court properly allowed McSweegan's testimony.

## III

In his final claim, the defendant contends that the trial court sentenced him on counts one, two and three of the amended information in violation of the defendant's protection against double jeopardy. The trial court imposed sentences of unconditional discharge on

and his history of arrests through the defendant's cross-examination of Castagna, any error would have been harmless.

counts one, two and three, and sentenced the defendant to fifteen years, suspended after five years, and five years probation on count four and three years consecutive on count five. The defendant asserts, and the state agrees, that because the defendant's conviction of possession in count one and possession with intent to sell in count three merge with his conviction of possession with intent to sell by a person who is not drug-dependent in count four, and because his conviction of possession within 1500 feet of a school and housing project in count two merges with his conviction of possession with intent to sell within 1500 feet of a school and housing project in count five,[5] it was improper for the trial court to sentence the defendant on the merged offenses.[6] The defendant and the state both request that the sentences with respect to counts one, two and three be vacated and that the case be remanded for resentencing. Although we agree that the sentences must be vacated, no resentencing is required.

The effect of the trial court's sentencing the defendant to unconditional discharge on the lesser offenses is that the defendant has five convictions. The effect of combining the convictions of the lesser offenses with those of the greater offenses is that the defendant will have only two convictions. See *State* v. *Chicano*, 216 Conn. 699, 722–25, 584 A.2d 425 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991). The collateral consequences of multiple convictions is sufficient to warrant combining the defendant's convictions and vacating the sentences of unconditional discharge on the first three counts.

The judgment is reversed in part and the case is remanded with direction to combine the defendant's

[5] General Statutes § 21a-278a (b) provides that the punishment imposed for a violation of this statute "shall be in addition and consecutive to any term of imprisonment imposed for violation of section 21a-277 or 21a-278. . . ."

[6] General Statutes § 53a-34 (b) provides in relevant part: "A sentence of unconditional discharge is for all purposes a final judgment of conviction."

convictions on counts one and three with his conviction on count four and to combine his conviction on count two with his conviction on count five and to vacate the sentences on counts one, two and three. The defendant's consecutive sentences on counts four and five remain the effective term of imprisonment.

In this opinion the other judges concurred.