******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# WELLS FARGO BANK, N.A. *v.* NICOLE M. FRATARCANGELI ET AL.
## (AC 41593)

DiPentima, C. J., and Moll and Norcott, Js.

*Syllabus*

The named defendant, F, who had executed a mortgage on certain real property, appealed to this court from the judgment of strict foreclosure rendered in favor of the substitute plaintiff, M Co. On appeal, F claimed, inter alia, that the trial court erred in striking her special defenses of illegal attestation of the mortgage deed and unclean hands as to the illegal attestation of the mortgage deed, and concluded that the validating statute (§ 47-36aa) rendered the mortgage deed valid and enforceable. In her special defenses, F had claimed, inter alia, that S, an agent of W Co., the predecessor in interest to M Co., breached her oath of office as a public official in her capacity as a notary public and committed acts of fraud in the execution of the mortgage deed, rendering the deed invalid and unenforceable. Specifically, F claimed that S did not notarize the mortgage deed while at F's home and did not have a second attesting witness as required by statute (§ 47-5 [a]), and that S's husband was the second attesting witness to the mortgage deed outside F's presence and without her knowledge. *Held:*

1. The trial court properly granted M Co.'s motion to strike F's special defense of illegal attestation of the mortgage deed as legally insufficient: the plain and unambiguous language of § 47-36aa (a) (2) provides that any mortgage containing a conveyancing defect as a result of, inter alia, being attested by one witness only is as valid as if it had been executed without the defect, unless an action challenging the validity of the mortgage was commenced and a notice of lis pendens was recorded within two years after the mortgage was recorded, which did not occur here, and, therefore, the alleged witness attestation defect was automatically cured by the validating act; moreover, there was no language in § 47-36aa (a) (2) that limits its applicability or otherwise carves out a fraud exception for instances where it is alleged that the lack of a valid second attesting witness resulted from a fraudulent act.

2. The trial court properly granted M Co.'s motion to strike F's special defense of unclean hands as to the attestation of the mortgage deed, as the witnessing defect in the mortgage deed was cured by operation of § 47-36aa (a) (2), and M Co.'s claim of foreclosure neither depended on nor was inseparably connected with S's alleged fraudulent conduct; moreover, F did not allege that the conduct claimed to be unclean was done directly against her interests, and, therefore, the unclean hands doctrine was not available to F on the basis of the allegations made in support of her second special defense.

Argued March 18—officially released August 27, 2019

*Procedural History*

Action to foreclose a mortgage on certain real property of the named defendant et al., and for other relief, brought to the Superior Court in the judicial district of Fairfield, where the defendant JPMorgan Chase Bank, N.A. was defaulted for failure to appear; thereafter, MTGLQ Investors, LP, was substituted as the plaintiff; subsequently, the named defendant filed an answer and special defenses; thereafter, the court, *Hon. Alfred J. Jennings, Jr.*, judge trial referee, granted in part the substitute plaintiff's motion to strike the named defendant's special defenses, and the named defendant appealed to this court, which dismissed the appeal; subsequently, the matter was tried to the court, *Hon.*

*George N. Thim*, judge trial referee; judgment of strict foreclosure, from which the named defendant appealed to this court. *Affirmed.*

*Gary L. Seymour*, for the appellant (named defendant).

*Todd H. Lampert*, with whom, on the brief, was *Arthur C. Zinn*, for the appellee (substitute plaintiff).

*Opinion*

MOLL, J. The defendant, Nicole M. Fratarcangeli,[1] appeals from the judgment of strict foreclosure rendered after a court trial in favor of the substitute plaintiff, MTGLQ Investors, LP. On appeal, the defendant claims that the court erred when it granted the substitute plaintiff's motion to strike as to her first and second special defenses of (1) illegal attestation of the mortgage deed and (2) unclean hands as to the attestation of the mortgage deed. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's claims. In its complaint, the original plaintiff, Wells Fargo Bank, N.A., alleged the following relevant facts. On March 21, 2005, the defendant executed a promissory note, in the principal amount of $535,000, in favor of World Savings Bank, FSB (World Savings Bank). The note was secured by a mortgage executed by the defendant on real property located at 370 Wilson Road in Easton. On April 4, 2005, the mortgage deed was recorded on the Easton land records. Thereafter, the original plaintiff acquired Wachovia Mortgage, FSB, formerly known as World Savings Bank. Beginning in July, 2009, and each and every month thereafter, the defendant failed to make payments on the note. On or before April 21, 2015, the original plaintiff became the party entitled to collect the debt evidenced by the note and to enforce the mortgage. In connection with the defendant's default on the note, the original plaintiff exercised its option to declare the entire balance of the note due and payable. In July, 2016, the original plaintiff commenced this foreclosure action against the defendant.

On December 2, 2016, the original plaintiff filed a motion for a judgment of strict foreclosure. On March 2, 2017, the original plaintiff filed a motion to substitute party plaintiff, as well as an accompanying memorandum of law in support thereof and an appended copy of its assignment of the mortgage to the substitute plaintiff. On March 20, 2017, the court granted the motion to substitute.

On May 17, 2017, the defendant filed an answer and eight special defenses.[2] In support of her first and second special defenses, the defendant alleged the following facts. World Savings Bank procured and paid for, as part of the closing costs, the services of a notary public, Kathleen Salerno, who conducted the closing at the defendant's home in Easton. While at the defendant's home, Salerno had the defendant execute all of the necessary closing documents, including the mortgage deed, but Salerno did not notarize those documents while at the defendant's home and did not request or provide a second attesting witness to the mortgage deed as required by General Statutes § 47-5 (a).[3] Rather,

Salerno subsequently had her husband "witness" the defendant's signature, outside of the defendant's presence and without the defendant's knowledge.

For her first special defense of illegal attestation of the mortgage deed, the defendant alleged that, on the basis of the foregoing factual allegations, Salerno, as an agent of World Savings Bank and a public official in her capacity as a notary public, breached her oath of office and committed acts of fraud in the execution of the mortgage deed, rendering the deed invalid and unenforceable. For her second special defense of unclean hands, relying on the same factual allegations, the defendant claimed that Salerno, as an agent of World Savings Bank, supplied a false witness in an effort to validate the mortgage and that such action constituted "a blatant dishonest attempt to validate an invalid mortgage . . . ." The remaining special defenses are not at issue in this appeal.

On May 31, 2017, the substitute plaintiff filed a motion to strike the defendant's special defenses, including the first and second special defenses, contesting the legal sufficiency thereof. On July 12 and 13, 2017, respectively, the defendant filed an objection and a memorandum of law in opposition to the motion to strike. On November 21, 2017, the court, inter alia, granted the substitute plaintiff's motion to strike as to the defendant's first and second special defenses.[4] With respect to the first special defense of illegal attestation of the mortgage deed, the court granted the motion on two grounds: (1) the defect of one invalid witness was cured by operation of General Statutes § 47-36aa (validating act); and (2) a defect in a mortgage cannot be used to defeat a foreclosure action as between the original mortgagor and mortgagee, as a mortgage deed that is not properly witnessed and acknowledged is nevertheless valid as between the parties to the instrument.[5] As to the defendant's second special defense of unclean hands, the court granted the motion to strike on the ground that the defect of one invalid witness was validated by § 47-36aa (a) (2), and Salerno's alleged fraudulent misconduct played no role in aiding the substitute plaintiff's claim for foreclosure. On December 20, 2017, the substitute plaintiff filed a reply to the defendant's non-stricken special defenses.

On April 12, 2018, following a trial to the court, the court rendered a judgment of strict foreclosure in favor of the substitute plaintiff. This appeal followed. Additional facts and procedural history will be provided as necessary.

At the outset, we note the standard of review and legal principles that apply to the defendant's claims. "Because a motion to strike challenges the legal sufficiency of a pleading and, consequently, requires no factual findings by the trial court, our review of the court's ruling on [a motion to strike] is plenary. . . .

A party wanting to contest the legal sufficiency of a special defense may do so by filing a motion to strike. The purpose of a special defense is to plead facts that are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action. . . . In ruling on a motion to strike, the court must accept as true the facts alleged in the special defenses and construe them in the manner most favorable to sustaining their legal sufficiency." (Citations omitted; internal quotation marks omitted.) *Barasso* v. *Rear Still Hill Road, LLC*, 64 Conn. App. 9, 12–13, 779 A.2d 198 (2001). "In determining whether a motion to strike should be granted, the sole question is whether, if the facts alleged are taken to be true, the allegations provide a cause of action or a defense." *County Federal Savings & Loan Assn.* v. *Eastern Associates*, 3 Conn. App. 582, 585, 491 A.2d 401 (1985). We now address the defendant's claims in turn.

I

The defendant first claims that the court erred in striking her first special defense of illegal attestation of the mortgage deed on the basis that § 47-36aa rendered the mortgage deed valid and enforceable despite Salerno's alleged fraudulent use of her husband as a false witness.[6] Specifically, without relying on any specific language of § 47-36aa or any underlying legislative history, the defendant argues that "it is clear that the legislature never intended in enacting [§] 47-36aa to validate such fraudulent acts." In response, the substitute plaintiff contends that the relevant provisions of § 47-36aa (a) are clear and unambiguous and provide that, unless an action challenging the validity of a mortgage on the basis of one of the conveyancing defects or omissions enumerated in § 47-36aa (a) is commenced and a notice of lis pendens is recorded on the land records within two years after the mortgage is recorded, such mortgage is as valid as if it had been executed without the defect or omission. Therefore, the substitute plaintiff argues, in the absence of such procedure being followed in the present case, the alleged witnessing defect is cured by operation of § 47-36aa (a). We agree with the substitute plaintiff.

We briefly address the applicable standard of review. Resolution of the defendant's claims on appeal requires us to determine whether § 47-36aa (a) applies to cure an attesting witness defect or omission in the context of an allegation of fraud in the execution of a mortgage deed. Because statutory interpretation involves a question of law, our review is plenary. *Bell Atlantic NYNEX Mobile, Inc.* v. *Commissioner of Revenue Services*, 273 Conn. 240, 249, 869 A.2d 611 (2005).

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the

statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . Importantly, ambiguity exists only if the statutory language at issue is susceptible to more than one plausible interpretation." (Footnote added; internal quotation marks omitted.) *Connecticut Housing Finance Authority* v. *Alfaro*, 328 Conn. 134, 141–42, 176 A.3d 1146 (2018).

We begin with the language of § 47-5, entitled in part "Requirements re conveyances of land," which provides in relevant part: "(a) All conveyances of land shall be: (1) In writing; (2) if the grantor is a natural person, subscribed, with or without a seal, by the grantor with his own hand . . . and (4) *attested to by two witnesses* with their own hands." (Emphasis added.) In the present case, the parties do not dispute that the mortgage deed was not "attested to by two witnesses" in accordance with § 47-5 (a) (4). That is, there is no dispute that (1) the defendant signed the note and the mortgage deed, (2) Salerno was a valid attesting witness to the mortgage deed, and (3) Salerno's husband was not a valid attesting witness to the mortgage deed.

We turn, therefore, to the language of the validating act, § 47-36aa, entitled "Validations re conveyancing defects of instrument recorded after January 1, 1997, insubstantial defects, defects re power of attorney, defects re conveyance by fiduciary." Section 47-36aa provides in relevant part: "(a) Conveyancing defects. Any deed, mortgage . . . or other instrument made for the purpose of conveying, leasing, mortgaging or affecting any interest in real property in this state recorded after January 1, 1997, which instrument contains any one or more of the following defects or omissions is as valid as if it had been executed without the defect or omission unless an action challenging the validity of that instrument is commenced and a notice of lis pendens is recorded in the land records of the town or towns where the instrument is recorded within two years after the instrument is recorded . . . (2) The instrument is attested by one witness only or by no witnesses . . . ." As stated by our Supreme Court, the validating act "provides a mechanism for curing certain defects in instruments affecting interests in real property, including defective acknowledgements or a lack of attesting witnesses . . . . [T]hese defects are cured automatically by statute, in the absence of a timely filed action specifically challenging the validity of the instrument and a timely filed lis pendens . . . ." *Alexson* v. *Foss*, 276 Conn. 599, 607–608, 887 A.2d 872 (2006).

The express language of § 47-36aa (a) (2) provides, inter alia, that any mortgage containing a conveyancing defect as a result of being "attested by one witness only or by no witnesses" is "as valid as if it had been executed without the defect or omission" unless an action challenging the validity of the mortgage is commenced and a notice of lis pendens is recorded within two years after the mortgage is recorded. There is no language in § 47-36aa (a) that limits the applicability of subdivision (2) or otherwise carves out a fraud exception for instances where it is alleged that the lack of a valid second attesting witness resulted from a fraudulent act. We conclude that the meaning of the validating act with regard to the question before us is plain and unambiguous and, therefore, our inquiry as to such meaning ends. See *In re Elianah T.-T.*, 326 Conn. 614, 624, 165 A.3d 1236 (2017) ("[i]f the legislature's intent is clear from the statute's plain and unambiguous language, our inquiry ends"). Simply put, § 47-36aa does not contain a fraud exception, and we do not write one into the statute. We further note that when the legislature wants to carve out a fraud exception, it knows how to do so. See, e.g., General Statutes § 12-415 (f) ("*[e]xcept in the case of fraud* . . . every notice of a deficiency assessment shall be mailed within three years after the last day of the month following the period for which the amount is proposed to be assessed or within three years after the return is filed, whichever period expires later" [emphasis added]).

Applying the language of § 47-36aa (a) (2) to the present case, we conclude that, in the absence of a timely filed action specifically challenging the validity of the mortgage at issue on the basis of an enumerated conveyancing defect, namely, the lack of a valid second witness as otherwise required by § 47-5 (a),[7] the validating act automatically cured such defect or omission. Cf. *Collard & Roe, P.C.* v. *Klein*, 87 Conn. App. 337, 350, 865 A.2d 500 (affirming trial court's determination that § 47-36aa did not cure invalidity of deed not signed by two witnesses because plaintiff brought action challenging conveyance and filed notice of lis pendens within statutory period), cert. denied, 274 Conn. 904, 876 A.2d 13 (2005); see also *Lupoli* v. *Lupoli*, 38 Conn. App. 639, 642–43, 662 A.2d 809 (special validating act cured any imperfection in execution of deed relating to second attesting witness), cert. denied, 235 Conn. 907, 665 A.2d 902 (1995). In this connection, we make clear that § 47-36aa (a) (2) does not render valid the invalid signature of Salerno's husband; rather, § 47-36aa (a) (2) cures the lack of a valid second witness. In light of the foregoing, and construing the factual allegations in a manner most favorable to the defendant, we conclude that the defendant failed to plead a legally sufficient special defense, and the trial court properly granted the substitute plaintiff's motion to strike as to the defendant's first special defense.

## II

The defendant next claims that the trial court erred in striking her second special defense of unclean hands as to the attestation of the mortgage. The substitute plaintiff argues, to the contrary, that the court properly struck the defendant's second special defense on the basis that the substitute plaintiff's claim of foreclosure neither depended on nor was inseparably connected with the alleged prior fraud of Salerno. We agree with the substitute plaintiff.

"[W]e note that an action to foreclose a mortgage is an equitable proceeding. . . . It is a fundamental principle of equity jurisprudence that for a complainant to show that he is entitled to the benefit of equity he must establish that he comes into court with clean hands. . . . The clean hands doctrine is applied not for the protection of the parties but for the protection of the court. . . . It is applied not by way of punishment but on considerations that make for the advancement of right and justice. . . . Because the doctrine of unclean hands exists to safeguard the integrity of the court . . . [w]here a plaintiff's claim grows out of or depends upon or is inseparably connected with his own prior fraud, a court of equity will, in general, deny him any relief, and will leave him to whatever remedies and defenses at law he may have. . . . Though an obligation be indirectly connected with an illegal transaction, it will not thereby be barred from enforcement, if the plaintiff does not require the aid of the illegal transaction to make out his case. . . . In addition, the conduct alleged to be unclean must have been done directly against the interests of the party seeking to invoke the doctrine, rather than the interests of a third party." (Citations omitted; internal quotation marks omitted.) *Thompson* v. *Orcutt*, 257 Conn. 301, 310–11, 777 A.2d 670 (2001).

Mindful of these principles, and construing the factual allegations in a manner most favorable to the defendant, we conclude that the trial court properly granted the substitute plaintiff's motion to strike as to the defendant's second special defense. As discussed in part I of this opinion, the witnessing defect in the mortgage deed was cured by operation of the validating act, and the substitute plaintiff's claim of foreclosure neither depended on nor was inseparably connected with the alleged fraudulent conduct of Salerno. Moreover, the defendant did not allege that the conduct claimed to be unclean was done directly against her interests.[8] Id., 311 ("the conduct alleged to be unclean must have been done directly against the interests of the party seeking to invoke the doctrine"). Accordingly, the unclean hands doctrine was not available to the defendant on the basis of the allegations made in support of her second special defense.

The judgment is affirmed and the case is remanded for the purpose of setting new law days.

In this opinion the other judges concurred.

[1] The complaint also named JPMorgan Chase Bank, N.A., as a defendant, but it was defaulted for failure to appear and is not participating in this appeal. Accordingly, we refer to Nicole M. Fratarcangeli as the defendant.

[2] The defendant asserted the following special defenses: (1) illegal attestation of the mortgage deed (first special defense); (2) unclean hands as to the attestation of the mortgage deed (second special defense); (3) unconscionability (third special defense); (4) equitable estoppel (fifth special defense); (5) statute of limitations (sixth special defense); (6) fraud as to the loan modification process (seventh special defense); (7) unclean hands as to the loan modification process (eighth special defense); and (8) equitable estoppel as to the loan modification process (ninth special defense). The defendant did not plead a fourth special defense.

[3] As a result of a typographical error, the special defense cites General Statutes § 47-5a, instead of General Statutes § 47-5 (a), which provides in relevant part: "All conveyances of land shall be: (1) In writing; (2) if the grantor is a natural person, subscribed, with or without a seal, by the grantor with his own hand . . . and (4) attested to by two witnesses with their own hands."

[4] In addition, the court denied the motion as to the third, fifth, seventh, eighth, and ninth special defenses and granted the motion as to the sixth special defense without prejudice to the defendant's right to plead a statute of limitations defense in response to any motion for a deficiency judgment that may have been filed later in the case.

On December 7, 2017, the defendant appealed from the court's November 21, 2017 order insofar as it granted the substitute plaintiff's motion to strike as to her first and second special defenses. On December 19, 2017, the substitute plaintiff filed a motion to dismiss the appeal for lack of subject matter jurisdiction and to sanction the defendant on the ground that her appeal was frivolous. On January 18, 2018, this court granted the substitute plaintiff's motion to dismiss on the basis that no final judgment had been rendered but denied its request for sanctions.

[5] In striking the defendant's first special defense, the court also rejected the defendant's contention that Salerno's failure to notarize the necessary closing documents, including the mortgage deed, while at the defendant's home rendered the mortgage deed invalid and unenforceable. On appeal, the defendant does not assert any claim with respect to that portion of the court's decision.

[6] Additionally, the defendant sets forth a separate claim on appeal that the court erroneously struck her first special defense by finding that the mortgage deed is enforceable between the parties on the basis of case law applicable to a defect, omission, and/or mistake, as opposed to an intentional act, in the execution of a mortgage deed. Because the defendant does not analyze, or even cite, any of the case law that she claims was misapplied, we do not address this separate claim further. See, e.g., *Citibank, N.A.* v. *Stein*, 186 Conn. App. 224, 248, 199 A.3d 57 (2018) (appellate courts are not required to review issues that have been improperly presented through an inadequate brief), cert. denied, 331 Conn. 903, 202 A.3d 373 (2019).

[7] It is undisputed that the defendant did not commence an action to challenge the validity of the mortgage based on the attesting witness defect within two years after the mortgage instrument was recorded (or at any other time).

[8] Indeed, during oral argument before this court, the following exchange occurred:

"The Court: What was the fraud on your client?

"[The Defendant's Counsel]: I don't think it's fraud on my client at all."